IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


THERESA P. HUNTER,

      Plaintiff,

vs.                                                                                                     No. 07cv0588 DJS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


**MEMORANDUM OPINION**

**THIS MATTER** is before the Court on Plaintiff's (Hunter's) Motion to Reverse and Remand for a Hearing, with Supporting Memorandum **[Doc. No. 16]**, filed on December 3, 2007, and fully briefed on February 11, 2008. On February 26, 2007, the Commissioner of Social Security issued a final decision denying Hunter's claim for disability insurance benefits. Hunter seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be **DENIED**.

**I. Factual and Procedural Background**

Hunter, now sixty years old (D.O.B. November 30, 1947), filed her application for disability insurance benefits on March 13, 2002 (Tr. 559) alleging disability since March 27, 1997, due to myofascial pain syndrome causing pain and symptoms in the back, neck and shoulders and degenerative arthritis causing pain and symptoms in the legs, knees, back, shoulders and neck.[1] Tr. 85-

---

[1] This was Hunter's third application for disability insurance benefits. Hunter filed applications on June 1998 and February 2000 (Tr. 559). The Commissioner denied both applications. Hunter did not file a request for reconsideration in either case. The February 2000

86. Hunter's insured status for disability insurance benefits expired on December 31, 2002. Tr. 561 Thus, Hunter must establish that she was disabled on or before that date. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993). Hunter has a twelfth grade education and past relevant work as a customer service representative and a transportation coordinator. Tr. 87.

On April 7, 2004, the ALJ denied Plaintiff's application. Tr. 15-26. The Appeals Council denied Plaintiff's request for review. Hunter then filed a civil action in the United States District Court for the District of Colorado. On February 21, 2006, the district court remanded the case for further consideration. On remand, the ALJ held a new hearing. On February 26, 2007, the ALJ issued a de novo decision (Tr. 556-580), finding Hunter was not disabled because she retained the residual functional capacity (RFC) to perform her past relevant work as a customer service representative (Tr. 579-580). The Appeals Council denied Hunter's request for review of the ALJ's decision. Hence, the February 26, 2007 decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Hunter seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.

---

application was initially denied on May 18, 2000. Because Hunter did not file a request for reconsideration, "the May 18, 2000 date is res judicata and [Hunter] may not be found disabled before this date." Tr. 559.

1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.*

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to

3

evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Hunter makes the following arguments: (1) the ALJ's finding that she can perform medium work is not supported by substantial evidence; (2) the ALJ's finding that she can return to work as a customer service representative is not supported by substantial evidence; and (3) the ALJ's credibility finding is not supported by substantial evidence.

**A. RFC Determination**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's
ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the

individual can perform based on the evidence available in the case record." *Id.* A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at 1. The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* at 7. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.*

Hunter contends the ALJ's RFC determination is not supported by substantial evidence because she cannot perform the walking and standing requirements of medium work due to back and knee pain.[2] Hunter asserts her complaints of back pain are supported by clinical findings and cites to a January 10, 2002 visit to Dr. Weber, her treating physician.

In his decision, the ALJ found in pertinent part:

> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium exertion work, or work which requires maximum lifting of fifty pounds and frequent lifting up to twenty-five pounds.**

Tr. 563. The ALJ then cited extensively to the record to support his RFC determination. *See* Tr. **563-579**.

Nonetheless, Hunter argues she cannot "perform the walking and standing requirements of medium work because of back and knee pain." Pl.'s Mot. to Reverse at 5. Hunter contends her complaints of back pain were supported by clinical findings such Dr. Weber's "objective findings of

---

[2] The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. SSR 83-19, 1983 WL 31251, *6 (1983)

tenderness over the trapezius" and his medical notes indicating she suffered from "chronic muscle spasms." *Id.* (citing to Tr. 190 – her January 10, 2002 visit with Dr. Hunter).

Additionally, Hunter contends her "condition deteriorated severely in July 2002 when she developed an acute arterial embolus in the right lower extremity, and then was diagnosed with stenosis in the iliac artery." Pl.'s Mot. to Reverse at 6. In support of her contention, Hunter points to an evaluation performed by John Burris, M.D., an agency consultant. Dr. Burris evaluated Hunter on August 10, 2002. Dr. Burris noted in pertinent part:

> **DIAGNOSES:**
> 1. Chronic neck and upper back pain. The claimant continues to be treated through her primary care provider for this condition. <u>She appears to have no functional deficits, as she displays full range of motion in the neck. Her neurologic exam is completely normal in the upper extremities</u>.
> 2. Bilateral arm pain. No atrophy or deformities are noted in her upper extremities. Once again, <u>functionally she has a normal exam with normal strength, reflexes, and movement</u>.
> 3. Bilateral lower extremity pain. <u>A fair amount of this pain appears to be related to her blood clots. She is undergoing treatments for this condition at this time. However, once again, functionally, she appears well with good range of motion and strength in her lower extremities</u>. She is able to ambulate unassisted without difficulty.
>
> **FUNCTIONAL ASSESSMENT:** <u>Standing and walking activities should probably be limited based on the claimant's recent blood clots</u>. I would place her in the light duty category with no walking or standing longer than six hours with frequent breaks as needed. She has no restrictions from sedentary duties.
>
> There are no medically assistive devices at this time.
>
> <u>I would place the claimant in a medium duty category for lifting and carrying with 50 pounds maximum, and no restrictions to repetitive lifting of light weights</u>.
>
> <u>No limitation to fine manipulation work</u>.

Tr. 253-254 (emphasis added).

Hunter asserts "[t]his opinion is far from support for a finding that [she] can perform medium work." Pl.'s Mot. to Reverse at 6. However, Dr. Burris made clear he was limiting Hunter's standing

6

and walking "based on the claimant's recent blood clots." Tr. 254. On October 2002, Dr. James Glass evaluated Hunter and noted she was taking Coumadin and had not had any recurrent embolic events. Tr. 284.

Hunter also contends the Medical Assessment of Ability to do Work-Related Activities (Physical) her physical therapist completed on **November 16, 2006**, does not support an RFC for medium work. *Id.* at 7. The Commissioner counters that Hunter's insured status for disability insurance benefits expired on December 31, 2002. Def.'s Response at 5 n. 2. Thus, the Commissioner argues Hunter must establish that she was disabled on or before that date, *see Henrie,* 13 F.3d at 360. Because the physical therapist completed the Medical Assessment of Ability to do Work-Related Activities (Physical) almost four years after Hunter's insured status expired, the Commissioner contends this evidence is outside the relevant review period.

Although Hunter's physical therapist completed the Medical Assessment of Ability to do Work-Related Activities (Physical) and a functional capacity assessment in late 2006, nonetheless, the ALJ considered this evidence. The ALJ noted:

> On November 16, 2006 Mary Bongenschuetz-Bonn, P.T. completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" and stated that the claimant could occasionally lift up to ten pounds twelve inches to waist and up to twenty pounds from twelve inches to shoulder height (Exhibit 15F). She could occasionally carry up to thirteen pounds. She could sit for two hours without interruption for a total of six hours in an eight hour workday. She could stand and walk for fifteen to twenty minutes each without interruption for a total of two hours each in an eight hour workday. She could occasionally reach, finger, feel, and push, pull with her hands. She could occasionally operate foot controls with her bilateral feet. She could occasionally climb stairs and ramps but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. She could occasionally work around moving mechanical parts and operating a vehicle but she could never work at unprotected heights, in humidity and wetness, or in extreme cold. She could perform activities like shopping travel without a companion for assistance, ambulate without using a wheelchair, walker, or two canes or crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed herself; care for personal hygiene; and sort, handle, and use papers/files.

> The claimant underwent a functional capacity assessment, by Ms. Bongenschuetz-Bonn, on November 16, 2006 (Exhibit 15F/6). <u>The claimant was said to be functioning at the light to medium level</u> for material handling with specific weight limits as follows: She should avoid squatting. Weight limits were 8 for semi-squat, 12 for shoulder height, eight for overhead, 13 for carry, and 38/45 for push/pull. Non-material handling was constant sitting, occasional standing/walking, infrequent overhead reaching, occasional forward reaching, infrequent bending, light arm/leg controls and occasional stairs. The claimant was to avoid squatting, balance, climbing ladders, and kneeling. Hand function was 50 for forceful grip on the left and 65 for forceful grip on the right. Assembly speed was slow speed and the claimant should not perform sustained gripping. It was noted that the claimant demonstrated grip strength in the 50th percentile on right upper extremity and the left upper extremity. She reported being ambidextrous with upper extremities.
>
> <u>The undersigned has considered the "Medical Assessment" and the "Functional Capacity Summary" completed by Ms. Bongenschuetz-Bonn, approximately four years after the claimant's date last insured.</u> The undersigned finds the recent testing of physical abilities to be very compatible with those expressed in the prior decision despite the fact that the claimant has testified that she has continued to worsen since December 2002. <u>The undersigned gives more weight to the test results at Exhibit 15F/6-7 than to the opinions expressed in the "Medical Assessment of Ability to do Work-Related Activities (Physical)."</u>

Tr. 574-575 (emphasis added). The ALJ also considered the evaluation and opinion of Anthony Caruso, M.D. Tr. 578. Dr. Caruso, an agency consultant, evaluated Hunter on **April 22, 2000**, and provided a functional assessment and medical source statement. Tr. 516-519. On that day, Hunter reported that she felt she was unable to do anything. Tr. 516. Dr. Caruso performed an extensive physical examination and found Hunter had "full range of motion and full strength" and opined "she should be able to perform standing and walking for six hours" with "no restrictions sitting." Tr. 518-519. Significantly, Dr. Caruso opined Hunter "would be able to occasionally carry 50 pounds and frequently carry 25 pounds. Tr. 519. Thus, Dr. Caruso's opinion also supports the ALJ's RFC.

Significantly, there is no statement of disability from any of her treating physicians. Dr. Arnold, a physician at the Pueblo of Isleta in New Mexico and Hunter's treating physician since November 2005, submitted a letter to Hunter's attorney, stating:

> I have not done any formal testing with her to determine her level of disability nor do I feel qualified to do the type of testing that the form you have attached requires. <u>Her inability to work has all been self reported and, per her history, is due to the constant pain that she is in</u>. If documentation of her level of disability is vital to her case, then I suggest that a more thorough evaluation be done by a physician who specializes in these types of determinations.

Tr. 622 (emphasis added). After a very careful review of the record, the Court finds that substantial evidence supports the ALJ's RFC determination.

## B. Past Relevant Work

At step four of the sequential evaluation process, the ALJ found Hunter could return to her past relevant work and was thus not disabled. A step-four analysis is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity, and in the second phase, he must determine the physical and mental demands of the claimant's past work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Hunter contends that, in finding she could perform her past relevant work as a customer representative, the ALJ failed to follow the *Winfrey* analysis. The Court disagrees.

At phase one, the ALJ found Hunter retained the RFC for "medium exertion work, or work which requires maximum lifting of fifty pounds and frequent lifting of up to twenty-five pounds." Tr. 563. The Court already found that the ALJ's RFC determination was supported by substantial evidence. At phase two, the ALJ noted Hunter was "capable of performing past relevant work as a customer service representative, as actually performed by the claimant,

[which] did not require lifting and carrying of more than fifty pounds."[3]  Tr. 579.  The vocational expert (VE) testified that Hunter's description of her customer service representative position was consistent with the job requirements contained in the Dictionary of Occupational Titles (DOT).[4]  However, under the DOT, the job would require occasional fingering, and fingering in her job sounded frequent.  Nonetheless, the VE testified that "in his experience, 40% of the jobs of customer service representative were similar to the claimant's in fingering" which "would leave 60% to occasional fingering, handling, and reaching."  Tr. 693.  Thus, the ALJ addressed the functional requirements of Hunter's past relevant work.

At phase three, the ALJ compared Hunter's RFC to the requirements of her past relevant work and concluded she could perform her past relevant work.  Tr. 580.  Specifically, the ALJ noted:

> The claimant reports that she has past relevant work as a customer service representative for a card company.  She did this work seasonally, working three to five months at a time at full time levels of forty hours a week or even more.  The claimant's total earnings for these years would appear to be less than substantial gainful activity if for a twelve month period.  However, in 1997, her earnings of $4,901 over a period of three months rather than twelve since she stopped work the end of March, average over $1600 per month .  This was well over the limits for substantial gainful activity.  Likewise, her earnings in 1998 of $4,665 averaged over a period of five months, came to over $930, also substantial gainful activity.  Thus, the claimant actually performed the work of customer representative at the level of substantial gainful activity for several years in succession.  As this work was substantial gainful activity, it qualifies as past relevant work.  The claimant reported that the work involved no standing and walking and lifting and carrying were less than ten pounds.

---

[3] An ALJ may find a claimant not disabled if she can perform her past relevant work either as she actually performed it or as it is generally performed in the national economy.  *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993); SSR 82-61, 1982 WL 31387, *2 (1982).

[4] At the administrative hearing, the VE testified he had been present during Hunter's testimony as to her past work as a customer service representative and opined "her description of that job, [was] compatible with the way it's described in the DOT."  Tr. 689.

> At the time of hearing, the vocational expert testified that the claimant's description of her customer service representative job was compatible with the DOT and with his experience. According to the DOT, job would require occasional fingering per the DOT. However, after the claimant was again questioned, the vocational expert stated that fingering in her job sounded frequent and, in his experience, 40% of the jobs of customer service representative were similar to the claimant's in fingering. This opinion was based upon his experience and upon interviews with people in similar positions.
>
> The undersigned has considered the argument by claimant's counsel that she is limited in fingering and manipulation, however, the undersigned finds that arguments is not supported by the medical record.
>
> **After consideration of the whole record and in particular the claimant's report as to the job requirements of her past relevant work as she actually performed it, the undersigned concludes that the claimant's past relevant work did not require the performance of work activities precluded by her medically determinable impairments. She was able to perform her past relevant work prior to her date last insured.**

Tr. 579-580 (emphasis added). The Court finds that the ALJ properly applied the *Winfrey* analysis at step four of the sequential evaluation process.

Finally, Hunter takes issues with the ALJ's rejection of her alleged limitation in fingering and manipulation. Hunter contends the ALJ's finding is not supported by the medical record, is conclusory, and should be reversed. However, at step four, a claimant bears the burden of proving that her medical impairments prevent her from performing work that she has performed in the past. *See Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). Hunter contends Dr. Griffis found a positive Tinel's sign at the right wrist and elbow, an indication of carpal tunnel syndrome. The record indicated that Dr. Griffis found a "mildly positive Tinel's sign at the right upper elbow" on November 6, 1996. Tr. 510. On that day Dr. Griffis noted:

> She is doing very well. She no longer has any right upper extremity pain. She states that her pain has completely resolved with the active tissue release techniques performed by Dr. Abercrombie. she is involved in a strengthening program at this time and is very happy with the results.
>
> **PHYSICAL EXAMINATION:** There is a mildly positive Tinel's sign at the right elbow. Spurling's maneuver is negative bilaterally. Upper extremity **strength** is 5/5 at the deltoids, biceps, triceps, wrist flexors and wrist extensors. **Deep tendon reflexes** are 2+/4 and

>  symmetrical at the triceps, biceps and brachioradialis.  Cervical **range of motion** is within functional limits in all planes.

*Id.* (emphasis in original).  On October 2, 1996, Hunter's nerve conduction studies of the right upper extremity was normal.  Tr. 511.  The Court has carefully reviewed the medical records and finds that the record does not support Hunter's alleged limitation in fingering and manipulation.

## C.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  "Standard boilerplate language will not suffice."  *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

In his decision, the ALJ set forth specific reasons underlying his credibility determination and thus will not be disturbed.  Tr. 575-579.  For example, the ALJ noted Hunter's failure to disclose to her primary physicians, one in New Mexico and one in Colorado, that she was actually seeing both physicians and receiving narcotics from both.  Tr. 576.  The ALJ also noted that, although Hunter had a pain producing impairment, the consultative physicians opined that the pain was not disabling.  Tr. 576.  The ALJ also noted her treating physician, Dr. Griffis, found her unmotivated to perform her strengthening exercises on a regular basis and was not interested in educating herself about her condition.  Tr. 579.  The ALJ inferred from Dr. Griffis' statements that Hunter's pain was not disabling as she reported since she was not motivated to follow Dr. Griffis' recommendations regarding her condition.

## D.  Conclusion

It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994). The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's finding of nondisability. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**